*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

T.J. THEISEN and THE THEISEN GROUP, LLC,

        Plaintiffs/Counterdefendants-
        Appellants/Cross-Appellees,

v

INVENTIVE CONSULTING, LLC,

        Defendant/Counterplaintiff-
        Appellee/Cross-Appellant,

and

MOHAMAD ZEIDAN and SLOBDAN
PAVLOVIC,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
August 12, 2021

No. 352952
Oakland Circuit Court
LC No. 2018-165067-CB

T.J. THEISEN and THE THEISEN GROUP, LLC,

        Plaintiffs/Counterdefendants-
        Appellees,

v

INVENTIVE CONSULTING, LLC,

        Defendant/Counterplaintiff-Appellant,

and

MOHAMAD ZEIDAN and SLOBDAN
PAVLOVIC,

No. 353990
Oakland Circuit Court
LC No. 2018-165067-CB

-1-

Defendants-Appellants.

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 352952, plaintiffs/counterdefendants, T.J. Theisen (Theisen) and The Theisen Group, LLC (TTG) (referred to collectively as plaintiffs), appeal as of right a February 13, 2020 judgment of no cause of action on plaintiffs' remaining claims and on the remaining counterclaims of defendant/counterplaintiff, Inventive Consulting, LLC (IC), following a jury trial in this case alleging breach of contract and related claims and counterclaims pertaining to an invention in the automotive industry. IC and defendants Mohamad Zeidan (Zeidan) and Slobdan Pavlovic (Pavlovic) (all three collectively referred to as "defendants") have filed a cross-appeal in Docket No. 352952 from the February 13, 2020 judgment. In Docket No. 353990, defendants appeal as of right a March 24, 2020 order denying IC's postjudgment motion for attorney fees and costs. The appeals were consolidated. *Theisen v Inventive Consulting, LLC*, unpublished order of the Court of Appeals, entered July 8, 2020 (Docket Nos. 352952 and 353990). In Docket No. 352952, we affirm in part, reverse in part, and remand for further proceedings. In Docket No. 353990, we dismiss the appeal as moot.

This case arises out of a dispute concerning an invention in the automotive industry. Theisen is the sole member of TTG. Pavlovic and Zeidan are members of IC and are actively involved in managing and operating IC. According to plaintiffs, in February 2016, the parties began negotiations regarding a joint business venture in which plaintiffs would help develop certain intellectual property (IP) created by defendants. According to their complaint, plaintiffs have "extensive experience in sales, marketing, development, business planning and successful implementation of new products in the automotive parts industry worldwide." Before being introduced to plaintiffs, defendants had "a business development/fundraising agreement with non-party company Global Eagle. Defendants were not satisfied with the lack of progress by Global Eagle."

According to plaintiffs, on or about May 26, 2016, the parties reached an oral agreement whereby plaintiffs would purchase the IP from defendants for $1 million; as part of this arrangement, Pavlovic and Zeidan would each receive 10% of equity in TTG and thus would each receive 10% of the future net profits of the venture. Theisen then began developing a three-year business plan with an executive summary and related business development documents; he also began reaching out to possible investors to raise the funds needed to fulfill the agreement.

At a July 18, 2016 meeting of the parties, Theisen presented his full PowerPoint presentation, which the parties refer to as a "deck," setting forth his business plans, executive summaries, cost analysis, and other items to be used in developing and marketing the IP. Each page of the deck contained language stating, "HIGHLY CONFIDENTIAL PROPERTY OF THE THEISEN GROUP." According to plaintiffs, the deck included Theisen's ideas and work product that reflected "his years of extensive, high level experience in the development of products for this industry and the ramp up for production of those products." After defendants reviewed the deck, they allegedly demanded alterations of the May 26, 2016 agreement. On September 12, 2016,

-2-

defendants sent plaintiffs a new written proposal. On October 3, 2016, Zeidan informed Theisen that the patent application had been filed and that a serial number had been issued. At an October 13, 2016 meeting of the parties, defendants indicated that other investors were interested in the project.

On October 26, 2016, plaintiffs provided to IC a letter of intent (LOI) regarding the terms of a proposed agreement. IC rejected the LOI and indicated that, if plaintiffs did not provide $1 million by the end of November 2016, then plaintiffs would be excluded from the project. On November 15, 2016, IC informed plaintiffs that the $1 million payment could be made by the end of December 2016, but that plaintiffs must memorialize their financial commitment by the end of November 2016. On December 2, 2016, plaintiffs provided a second LOI to IC, confirming plaintiffs' financial commitment and accepting IC's September 12, 2016 offer. IC rejected the second LOI and demanded a fully executed contract. On December 5, 2016, plaintiffs submitted to defendants a proposed written contract called a technology purchase agreement (TPA). On December 9, 2016, IC instructed plaintiffs to delay payment until January 2017.

According to plaintiffs, by January 2017, the possible investors that plaintiffs had recruited grew wary and frustrated because of defendants' continued delays and unwillingness to sign or accept written documentation of an agreement; the possible investors thus were unwilling to fund a payment to defendants in January 2017. On February 18, 2017, Theisen received a letter from attorney Thomas Heed on behalf of IC stating that the project was no longer open to plaintiffs and that plaintiffs no longer had authority to raise funds for the project.

Plaintiffs commenced this action against defendants, alleging claims of breach of contract, promissory estoppel, unjust enrichment, fraud, misappropriation of trade secrets, and breach of fiduciary duty in a joint venture. IC filed a countercomplaint alleging fraud, breach of contract, tortious interference with business relationships, statutory conversion, defamation, and civil conspiracy. Most of the claims and counterclaims were dismissed by summary disposition or directed verdict. At the conclusion of trial, the jury rejected the remaining claims and counterclaim. The trial court entered a judgment in accordance with the jury verdict. IC filed a postjudgment motion for costs and attorney fees, which the trial court denied. These appeals and the cross-appeal ensued.

## I. PLAINTIFFS' ARGUMENTS ON APPEAL IN DOCKET NO. 352952

### A. TRADE SECRET

Plaintiffs first argue that the trial court erred in granting summary disposition to defendants under MCR 2.116(C)(8) on plaintiffs' trade-secret claim because the complaint set forth factual allegations that would satisfy the definition of a trade secret under the Uniform Trade Secrets Act (UTSA), MCL 445.1901 *et seq*. We agree.

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the

pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*Id*. at 159-160 (quotation marks and citations omitted).]

Under Michigan's UTSA, misappropriation of a trade secret "includes the disclosure or use of a trade secret without consent." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 132; 649 NW2d 808 (2002), citing MCL 445.1902(b)(*ii*). MCL 445.1902(d) provides:

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (*i*) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (*ii*) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The existence of a trade secret is an element of a claim for misappropriation of a trade secret under Michigan law. See *Nedschroef Detroit Corp v Bemas Enterprises, LLC*, 106 F Supp 3d 874, 884 (ED Mich, 2015), aff'd 646 F Appx 418 (CA 6, 2016) (quotation marks and citations omitted).[1] "It is the plaintiff's burden of pleading and proving the specific nature of the trade secrets." *Apex Tool Group, LLC v Wessels*, 119 F Supp 3d 599, 608 (ED Mich, 2015) (quotation marks and citation omitted).

The "extent of measures taken to guard secrecy of information" is among the factors used to determine whether a trade secret exists. *Dura Global Technologies, Inc v Magna Donnelly Corp*, 662 F Supp 2d 855, 859 (ED Mich, 2009) (quotation marks and citations omitted). The UTSA requires *reasonable* efforts under the circumstances to maintain secrecy; perfection is not required. *Giasson Aerospace Science, Inc v RCO Engineering, Inc*, 680 F Supp 2d 830, 840 (ED Mich, 2010).

> Whether the measures taken by a trade secret owner are sufficient to satisfy the [UTSA's] reasonableness standard ordinarily is a question of fact for the jury. . . . [O]nly in an extreme case can what is a reasonable precaution be determined as a matter of law, because the answer depends on a balancing of costs and benefits that will vary from case to case. [*Id*. (quotation marks, brackets, and citation omitted).]

Plaintiffs' complaint alleged that Theisen "is the sole member of" TTG, which is a limited liability company. "Theisen has extensive experience in sales, marketing, development, business planning and successful implementation of new products in the automotive parts industry

---

[1] Although decisions of lower federal courts are not binding on this Court, we may "find their analyses and conclusions persuasive." *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

worldwide." According to the complaint, Theisen prepared "an executive summary and three[-]year business plan" in regard to defendants' IP. Theisen met with defendants and gave them "his full PowerPoint deck with business plans, executive summaries, cost analysis, and other items to be used in the development and marketing of the IP." The complaint further alleged,

> This PowerPoint deck is marked "HIGHLY CONFIDENTIAL PROPERTY OF THE THEISEN GROUP," on each page of the document; the presentation included a detailed summary of the product, its market, design advantages, Theisen's ideas and innovations, Theisen's detailed revenue projections, detailed projected timelines and startup expenses, competitor and customer analysis, and otherwise included the work product Mr. Theisen had developed using his years of extensive, high level experience in the development of products for this industry and the ramp up for production of those products.

The complaint asserted that "[p]laintiffs' business plan, product development plan, business strategies, market analysis information, sales and marketing plans, and marketing work objectives, as more fully described above, constitute trade secrets as defined under the [UTSA]." These trade secrets afforded plaintiffs a competitive advantage and were "known only by [p]laintiffs and limited representatives on a need to know basis." The complaint alleged that "[p]laintiffs took measures reasonable and appropriate under the circumstances to guard the secrecy of these trade secrets."

The trial court ruled that, "[b]ecause the complaint contains no specific allegations indicating that any efforts were made to protect the secrecy of the information at issue, [d]efendants are entitled to summary disposition of the trade[-]secret claim under MCR 2.116(C)(8)." We disagree with the trial court's ruling. The complaint contains factual allegations sufficient to support a conclusion that plaintiffs undertook efforts reasonable under the circumstances to maintain the secrecy of the information. The complaint alleged that each page of the deck was marked, "HIGHLY CONFIDENTIAL PROPERTY OF THE THEISEN GROUP." Also, the complaint asserted that the information was "known only by [p]laintiffs and limited representatives on a need to know basis." Defendants emphasize plaintiffs' failure to obtain a nondisclosure agreement for the information contained in the deck. But the failure to obtain a nondisclosure agreement does not as a matter of law preclude a determination that reasonable efforts were made to protect the secrecy of the information. See *Giasson Aerospace*, 680 F Supp 2d at 839-840 (stating that a jury could find that the plaintiffs made reasonable efforts to maintain secrecy even in the absence of a nondisclosure agreement).

Given the allegations that plaintiffs shared the information with only limited persons and marked each page of the deck as highly confidential, the complaint adequately alleged reasonable efforts under the circumstances to maintain the secrecy of the information. This is particularly true in light of the relatively small size of TTG's operation, as reflected in the allegation that TTG was a limited liability company of which Theisen was the sole member. See *id*. at 840 ("The fact that [the] [p]laintiffs are a relatively small operation also supports their argument that they took reasonable precautions. The precautions that are reasonable for a large commercial organization may be unreasonable for a smaller operation depending on the required cost benefit analysis.").

Accordingly, the trial court erred in granting summary disposition to defendants on plaintiffs' claim for misappropriation of trade secrets.[2]

Defendants assert as an alternative ground for affirmance an argument that the trial court did not reach, i.e., that plaintiffs had to attach to their complaint all documents cited in the complaint, and that plaintiffs failed to attach the deck and the nondisclosure, noncircumvention agreement (NDNCA) signed by the parties on February 24, 2016, to protect the confidentiality of the IP, both of which were cited in the complaint. Defendants' argument fails. MCR 2.113(C)(1) provides:

> (1) If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading and labeled according to standards established by the State Court Administrative Office unless the instrument is
>
> (a) a matter of public record in the county in which the action is commenced and its location in the record is stated in the pleading;
>
> (b) in the possession of the adverse party and the pleading so states;
>
> (c) inaccessible to the pleader and the pleading so states, giving the reason; or
>
> (d) of a nature that attaching the instrument would be unnecessary or impractical and the pleading so states, giving the reason.

Contrary to defendants' assertion, MCR 2.113(C)(1) does not require attaching every document cited in a complaint; it requires attaching a written instrument if a claim or defense is based on that written instrument, with certain exceptions. Examples of a written instrument include a contract or a deed. See *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 621; 552 NW2d 657 (1996), aff'd 457 Mich 341 (1998). Defendants fail to develop a coherent argument for how or why the NDNCA and the deck qualify as written instruments on which plaintiffs' claim was based, and that were thus required to be attached to the complaint. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citation omitted). Nor do defendants offer meaningful argument rebutting the applicability of exceptions to the attachment requirement, particularly given that the deck allegedly contained confidential information that was presented to defendants. Defendants' appellate presentation with respect to the attachment requirement is deficient and fails to provide an alternative ground for affirmance.

---

[2] We emphasize that the only element or requirement of a trade-secret claim that is before this Court is whether plaintiffs made reasonable efforts to maintain the secrecy of the information. The trial court did not address, and the parties on appeal have not briefed, any of the other elements.

Given our conclusion that the trial court erred in granting summary disposition to defendants on the trade-secret claim, we need not reach plaintiffs' argument that they should have been allowed to amend the complaint with respect to the trade-secret claim and that the trial court erred in striking the portion of the first amended complaint that added back the trade-secret claim.

## B.  BREACH OF CONTRACT

Plaintiffs next argue that the trial court erred in granting summary disposition to IC under MCR 2.116(C)(10) on plaintiffs' claim in Count 1 for breach of the alleged May 26, 2016 oral contract.[3]  We disagree.

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim.  When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion.  A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact.  A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.  [*Id*. at 160 (quotation marks and citations omitted).]

"The existence and interpretation of a contract are questions of law reviewed de novo."  *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

The elements of a claim for breach of contract are "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach."  *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601; 865 NW2d 915 (2014).  "Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed."  *Kloian*, 273 Mich App at 452 (quotation marks and citation omitted).  "Further, a contract requires mutual assent or a meeting of the minds on all the essential terms."  *Id*. at 453.

Plaintiffs failed to present evidence demonstrating mutual assent or a meeting of the minds on all the essential terms of the alleged May 26, 2016 oral agreement.  Plaintiffs claim that the parties orally agreed on that date that defendants would sell the IP to plaintiffs for $1 million paid in three installments and that Zeidan and Pavlovic would each receive 10% shares of TTG.  But the record does not reflect the parties agreed on certain contingencies of the alleged contract.  In their first amended complaint, plaintiffs alleged that the parties agreed on May 26, 2016, that their oral contract was contingent on IC's termination of its relationship with Global Eagle and that, after such termination occurred, the parties would draft a definitive written contract.  But Theisen's deposition testimony differed from this allegation in his complaint.  Theisen testified to the effect that, although defendants may have viewed the contract as contingent on IC's termination of its

---

[3] We note that some of defendants' argument on this issue is focused on plaintiffs' claim in Count 3 for breach of the alleged September 12, 2016 contract and on the alternative claims of promissory estoppel in Counts 2 and 4.  But plaintiffs have clarified in their reply brief that their argument for this issue is confined to the claim in Count 1 for breach of the alleged May 26, 2016 oral contract. This Court therefore need not address the claims in Counts 2 through 4.

-7-

relationship with Global Eagle, Theisen did not believe the contract was contingent on such termination. Theisen testified that "maybe" defendants "thought" the contract was contingent on the termination of IC's relationship with Global Eagle. But Theisen further testified that he "[a]bsolutely" believed that the parties had a contract, regardless of whether IC terminated its relationship with Global Eagle.

Moreover, Theisen testified that he believed performance under the contract was not required unless and until plaintiffs' patent attorney, John Artz, Sr., confirmed the patentability of the IP. In particular, when asked if there were any events that had to occur before performance under the alleged contract was required, Theisen testified:

> John Artz, a very well-respected global patent attorney, needed to understand this, make sure there was no patent infringement on this before any monies were to be—or even for the funding to be to the next level, he needed to make sure there was no infringements, nobody's filed anything that—so no infringement on the patent and that it was a viable product or patent.

Plaintiffs have provided no evidence that defendants agreed that performance under the contract was contingent on Artz's confirmation of the patentability of the IP. Indeed, in a July 23, 2016 e-mail to defendants, Theisen criticized them for not meeting with Artz, whose endorsement Theisen viewed as essential to the project. In particular, Theisen's e-mail stated, in relevant part: "Not meeting with John Artz[,] Sr[.,] at Dickinson Wright was a grave setback. His endorsement of the IP was crucial to the funding based on my business plan." By his own words, Theisen viewed Artz's role as crucial, but there is no evidence that defendants agreed to Artz's role; Theisen's e-mail strongly indicates a lack of agreement.

In short, the evidence does not establish a meeting of the minds on all essential terms of the alleged May 26, 2016 oral contract. Theisen's deposition testimony indicates that defendants may have viewed the contract as contingent on the termination of IC's relationship with Global Eagle, but that Theisen did not share that view (despite the contrary allegation in plaintiffs' first amended complaint). And Theisen testified that he viewed performance under the contract as contingent on Artz's confirmation of the patentability of the IP, but there is no evidence that defendants agreed to this. Accordingly, because plaintiffs have failed to present evidence establishing a meeting of the minds on all essential terms, the trial court properly granted summary disposition to IC on the claim in Count 1 for breach of the alleged May 26, 2016 oral contract.[4]

---

[4] Plaintiffs argued below that the July 23, 2016 chain of e-mails between the parties documented their May 26, 2016 agreement. But that e-mail chain shows that the parties were continuing to negotiate about the terms; it does not establish that the parties had reached a meeting of the minds on May 26, 2016, on all essential terms.

## C. FRAUD

Plaintiffs next argue that the trial court erred in granting summary disposition to Zeidan and Pavlovic under MCR 2.116(C)(8) with respect to plaintiffs' fraud claim. Plaintiffs also argue that the trial court erred in granting a directed verdict to IC on plaintiffs' fraud claim. We disagree.

### 1. SUMMARY DISPOSITION

On February 25, 2019, the trial court issued an order denying Zeidan and Pavlovic's initial motion for summary disposition with respect to plaintiffs' claims against them. The trial court stated that plaintiffs had failed to state a claim on which relief could be granted against Zeidan and Pavlovic in the absence of any specific allegations against them in their individual capacities, separate and distinct from the allegations against IC. But in lieu of granting Zeidan and Pavlovic's motion for summary disposition, the trial court granted plaintiffs an opportunity to amend their complaint to remedy the deficiencies identified by the trial court or to dismiss the claims against Zeidan and Pavlovic in their individual capacities. On March 4, 2019, plaintiffs filed their first amended complaint alleging that Zeidan and Pavlovic were named as defendants in their individual capacities because, in relevant part, they were liable for fraud, which they allegedly committed while acting on behalf of IC. Zeidan and Pavlovic again moved for summary disposition, which the trial court granted because plaintiffs' first amended complaint failed to set forth any claim against Zeidan and Pavlovic in their individual capacities. The trial court reasoned that plaintiffs' first amended complaint added eight new paragraphs, none of which set forth a claim on which relief could be granted against Zeidan and Pavlovic.

In their appellate argument on this issue, plaintiffs fail to set forth the elements of fraud or to explain how any factual allegations in the first amended complaint satisfy those elements for the purpose of a fraud claim against Zeidan and Pavlovic.[5] "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine*, 327 Mich App at 519-520 (citation omitted). Plaintiffs argue only that Zeidan and Pavlovic may be held liable for IC's fraud because they are the only members of IC and were intimately involved in every detail of the transactions. Plaintiffs suggest that, because the fraud claim against IC was allowed to go to trial, the fraud claim against Zeidan and Pavlovic should also have gone to trial. But as discussed next, the trial court properly granted a directed verdict to IC on plaintiffs' fraud claim. Plaintiffs identify no basis to conclude that the fraud claim against Zeidan and Pavlovic

---

[5] In their next argument, plaintiffs challenge the grant of a directed verdict to IC on the fraud claim and, in that context, discuss the elements of fraud and plaintiffs' belief that the evidence at trial satisfied those elements. But the present issue involves a grant of summary disposition to Zeidan and Pavlovic under MCR 2.116(C)(8). A motion for summary disposition under that subrule is decided solely on the pleadings. *El-Khalil*, 504 Mich at 159-160. Plaintiffs' argument about whether the evidence at trial satisfied the elements of fraud is not pertinent to the present issue involving whether the factual allegations in the first amended complaint satisfied those elements for the purpose of Zeidan and Pavlovic's motion for summary disposition under MCR 2.116(C)(8).

could have survived after the grant of a directed verdict to IC on that claim. Plaintiffs' argument on this issue thus fails to establish the existence of an error requiring reversal.

## 2. DIRECTED VERDICT

A trial court's decision on a motion for a directed verdict is reviewed de novo. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Id*. "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 719; 922 NW2d 662 (2018) (quotation marks and citation omitted).

The elements of a fraud claim are:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012) (quotation marks and citation omitted).]

In general, "an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and will not support a claim of fraud." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009). An exception to this general rule exists for a fraudulent misrepresentation that is "based upon a promise made in bad faith without intention of performance." *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 337-338; 247 NW2d 813 (1976). To come within this exception, the evidence of fraudulent intent "must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *Id*. at 338-339 (quotation marks and citation omitted). Therefore, under the bad-faith exception, a plaintiff must demonstrate that, at the time of making the promise, the defendant did not intend to fulfill it. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 379; 689 NW2d 145 (2004).

Plaintiffs argue that they presented sufficient evidence at trial to fall within the bad-faith exception. We disagree. Plaintiffs assert that defendants promised to engage TTG to purchase and market the IP as a way to induce TTG to provide valuable marketing information, including the deck and knowledge about patentability, and that defendants later used this information to market the IP to York Innovative Group, LLC (York), and Royal Precision Products, LLC (Royal Precision), eventually selling the IP to Royal Precision. But plaintiffs presented no evidence that defendants acted in bad faith, i.e., that they made promises with the contemporaneous intention of not fulfilling those promises. Even if the evidence at trial indicated that defendants made promises and then later failed to fulfill those promises, this alone does not establish that defendants acted in bad faith at the time of making the promises; otherwise, essentially every claim for breach of

-10-

contract would amount to a fraud claim. Plaintiffs assert that "[t]here was no evidence at trial that [d]efendants intended to honor their commitment to TTG." But this assertion inverts the burden of proof. Plaintiffs had the burden of proving their fraud claim. *Hi-Way*, 398 Mich at 336. Accordingly, the trial court properly granted a directed verdict to IC on plaintiffs' fraud claim.

## D. EXPERT TESTIMONY

Plaintiffs next argue that the trial court abused its discretion by admitting at trial the testimony of a defense expert, Dr. Stewart Thornhill, and by limiting the cross-examination of Dr. Thornhill. We disagree.

"A trial court's decision regarding the admissibility of expert testimony is reviewed for an abuse of discretion, as are all the trial court's evidentiary decisions. A trial court abuses its discretion if its decision results in an outcome outside the range of principled outcomes." *Varran v Granneman (On Remand)*, 312 Mich App 591, 621; 880 NW2d 242 (2015) (citations omitted).

MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before admitting expert testimony, a trial court must determine that it is relevant and reliable. *Varran*, 312 Mich App at 622. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Dr. Thornhill testified that he is an investor and a business professor at the University of Michigan. Dr. Thornhill reviews presentations seeking investors on a weekly, sometimes daily, basis. The trial court recognized Dr. Thornhill as an expert in reviewing presentations seeking investors. Dr. Thornhill testified regarding the quality or value of the deck prepared by Theisen regarding defendants' IP:

> [I]t was not a [d]eck that I would take forward to investors if it were mine. There was not enough information on customers, financials, return on investment, competitor response, or any other technical details that would inspire me to ask for a meeting beyond the initial slide [d]eck. Most investors will see a business plan or [d]eck, they'll read the executive summary before proceeding and deciding whether they wanted to go into more detail. If this amount of information were presented in an executive summary I certainly wouldn't have . . . found it credible.

Plaintiffs assert that a business professor "could not conceivably have expertise about the value of a unique 'deck' in this specific transaction between two small business entrepreneurs, nor was any such expertise required or helpful." We disagree with plaintiffs' argument. Plaintiffs'

-11-

claims centered on a contention that the deck conferred valuable information to defendants, who then used that information for their own benefit. The value or quality of the deck was thus a relevant issue. Plaintiffs provide no basis to question the trial court's determination that Dr. Thornhill, as an investor and a business professor who regularly reviewed presentations seeking investors, was qualified as an expert in that area. Plaintiffs have not made a convincing challenge to the relevance or reliability of Dr. Thornhill's expert testimony.

Plaintiffs further argue that the trial court improperly limited the scope and duration of their counsel's cross-examination of Dr. Thornhill. We disagree. "The scope and duration of cross-examination is in the trial court's sound discretion; we will not reverse absent a clear showing of abuse." *Wischmeyer v Schanz*, 449 Mich 469, 474-475; 536 NW2d 760 (1995).

While cross-examining Dr. Thornhill, plaintiffs' counsel sought to have Dr. Thornhill review a deck that Zeidan had prepared regarding the IP before Theisen prepared his deck. IC's counsel objected and stated, "[Dr. Thornhill] has not reviewed any other documents and asking him to do so on the stand without having reviewed the documents first is both not in keeping with Michigan's rules for expert witnesses and it's not really fair to the witness." The trial court stated that, if Dr. Thornhill had not previously seen the prior deck, then he was not able to evaluate it. The trial court further stated:

> The point of the matter is that you can't just give him something stone cold and expect him . . . to be able to speak to it. The whole purpose was that this was what he did. The jury can determine how much to believe what he said, whether to believe anything he said, whether they even care what he said. So, if you, you know, for you to give him now another [d]eck to have him compare, that's—I'm not going to allow that, let's move on.

When plaintiffs' counsel asked more questions that referred to the prior deck, IC's counsel objected, and the trial court ruled, "As I said, I'm not going to allow him to testify to something that he's never seen, that he's never evaluated, that he's—that's not what he's hired to do. So, if you want to question him as to his methodology of how he arrived at what he did, that's fine, that's—that's acceptable."

After the jury was excused from the courtroom, plaintiffs' counsel made an offer of proof regarding the deck prepared by Zeidan. Plaintiffs' counsel wanted to show that deck to Dr. Thornhill in order to ask him whether Theisen's deck was an improvement over Zeidan's deck. IC's counsel responded that plaintiffs' counsel could have obtained his own expert and could have shown Zeidan's deck to Dr. Thornhill before trial; it was unreasonable to ask Dr. Thornhill to review a document he had never seen before while he was on the witness stand at trial. The trial court stated: "Thank you, counselors, you've made your record. There's nothing that prevents you from making argument to the jury that he didn't have the benefit of looking at that other [d]eck, and leave it at that."

On appeal, plaintiffs renew their argument that their counsel should have been allowed to cross-examine Dr. Thornhill about Zeidan's deck in order to show that Dr. Thornhill's opinion was flawed and weak because he did not know the full context of what occurred. But plaintiffs fail to rebut the trial court's reasoning, i.e., that it was unfair to hand Dr. Thornhill a document he

had never previously seen and ask him to review and evaluate it while on the witness stand at trial. Plaintiffs offer no explanation for why they could not have deposed Dr. Thornhill and asked him to review Zeidan's deck before trial. Indeed, when denying plaintiffs' pretrial motion in limine, the trial court noted that plaintiffs had ample time to depose Dr. Thornhill before trial; but plaintiffs chose not to do so. Further, as the trial court noted at trial, plaintiffs were free to cross-examine Dr. Thornhill at trial about the methodology by which he arrived at his opinions, and plaintiffs were also free to argue to the jury that Dr. Thornhill lacked the benefit of having reviewed the prior deck when formulating his opinions. The trial court did not abuse its discretion on this matter.

Nor have plaintiffs established that the trial court imposed an improper limitation on the duration of the cross-examination of Dr. Thornhill. MRE 611(a) provides,

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

A trial court has discretion to limit the time for examining witnesses. *Barksdale v Bert's Marketplace*, 289 Mich App 652, 655-656; 797 NW2d 700 (2010). But the trial court may not impose an "utterly arbitrary time limit" that is "unrelated to the nature and complexity of the case or the length of time consumed by other witnesses." *Id*. at 657 (quotation marks, brackets, and citation omitted).

During the cross-examination of Dr. Thornhill, the trial court noted that the Sheriff's Office required the courthouse building to be empty by 5:00 p.m. Plaintiffs' counsel continued the cross-examination. Later during the cross-examination, IC's counsel objected to some of the questioning, and the following exchange then occurred:

> [*Plaintiffs' counsel*]: I just really have two more questions.
>
> *The Court*: Hurry up and ask them because I just got a message that we have to—
>
> [*Plaintiffs' counsel*]: I'm sorry.
>
> *The Court*: —vacate the building, so let's move it.
>
> [*Plaintiffs' counsel*]: Okay. Okay.

Plaintiff's counsel then asked one more question, Dr. Thornhill answered the question, and plaintiff's counsel stated, "Okay, I don't have anything else."

After the jury was excused from the courtroom, plaintiffs' counsel objected to the purported limitations on his ability to cross-examine Dr. Thornhill, including that there was not enough time to cross-examine Dr. Thornhill. Plaintiffs' counsel did not explain what additional questions he wanted to ask Dr. Thornhill (other than about Zeidan's deck, but as explained earlier, such questioning was precluded on other grounds unrelated to time constraints).

-13-

On appeal, plaintiffs argue that the trial court imposed an improper time limitation. But plaintiffs fail to identify what questioning was needed, yet precluded, by the time limitation. When plaintiffs' counsel said during cross-examination that he had only two more questions, the trial court allowed plaintiffs' counsel to proceed. Plaintiffs' counsel then asked only one more question, and after Dr. Thornhill answered it, plaintiffs' counsel said he had no further questions. Plaintiffs have not shown that the trial court imposed an "utterly arbitrary time limit" that was "unrelated to the nature and complexity of the case or the length of time consumed by other witnesses." *Barksdale*, 289 Mich App at 657 (quotation marks, brackets, and citation omitted).

## E. DISCOVERY

Plaintiffs next argue that the trial court erred in denying certain motions filed by plaintiffs to compel discovery. We conclude that this issue is moot.

This Court reviews de novo whether an issue is moot. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). This Court generally does not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id*. "A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Garrett*, 314 Mich App at 449 (quotation marks and citation omitted).

Plaintiffs argue that the trial court abused its discretion in refusing to compel defendants to provide further discovery regarding the consideration that Royal Precision was to pay to IC, specifically the contingent payments to be made by Royal Precision to IC in the future. Below plaintiffs argued that the requested discovery was pertinent to the element of damages for their breach-of-contract claims. But the trial court ultimately granted summary disposition to defendants on plaintiffs' breach-of-contract claims on grounds that were unrelated to damages. As explained earlier, we are not disturbing the grant of summary disposition to defendants on the breach-of-contract claims. Plaintiffs have not argued that the requested discovery was pertinent to the element of damages for any of their other claims.[6] Accordingly, any ruling by this Court regarding the discovery dispute at issue would have no practical legal effect on the case. This issue is therefore moot.

## F. IC'S COUNTERCLAIM

Plaintiffs next argue that the trial court erred in denying their motions for summary disposition and directed verdict with respect to IC's counterclaim for breach of the confidentiality provision of the NDNCA. This issue is moot.

---

[6] Plaintiffs were unsuccessful on all of their claims below, either at the summary disposition stage or at trial, on grounds unrelated to damages. As explained earlier, we are reversing the grant of summary disposition to defendants on the claim for misappropriation of trade secrets and remanding for further proceedings, but that does not alter our determination that the present issue is moot. Plaintiffs have made no argument below or on appeal that the discovery at issue is pertinent to the element of damages for the trade-secret claim.

-14-

The jury rendered a verdict in favor of plaintiffs on IC's counterclaim for breach of the confidentiality provision of the NDNCA; the trial court then entered judgment in favor of plaintiffs on that counterclaim in accordance with the jury verdict. Therefore, any ruling by this Court regarding whether plaintiffs were entitled to summary disposition or a directed verdict on that counterclaim would have no practical legal effect on the case, and this issue is moot. See *Kingsford Chemical Co v Kingsford*, 347 Mich 91, 110; 78 NW2d 587 (1956) (determining that the defendant's motion for a directed verdict became moot once the jury rendered a verdict in favor of the defendant).

Plaintiffs assert that allowing the counterclaim to go to the jury affected deliberations by allowing the jury to "balance out" plaintiffs' remaining claims and IC's remaining counterclaim. Plaintiffs do not fully explain what they mean by this. It appears plaintiffs are suggesting that the jury's verdict regarding plaintiffs' claims was somehow affected by the fact that IC's counterclaim was submitted to the jury. Plaintiffs' contention is entirely unsupported. The trial court instructed the jury to follow the court's instructions on the law, to determine the facts from the evidence presented in court, and to decide the case by applying the law to the facts. The court further instructed the jury on the elements of each of plaintiffs' remaining claims and IC's remaining counterclaim. Jurors are presumed to follow the trial court's instructions. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013). No basis exists to doubt that the jury followed the trial court's instructions by deciding each of the remaining claims and counterclaim on the basis of the applicable law and the evidence. Plaintiffs' suggestion otherwise is meritless. Because the jury rendered a verdict in favor of plaintiffs on the counterclaim for breach of the confidentiality provision of the NDNCA, the present issue is moot.

## G. GREAT WEIGHT OF THE EVIDENCE

Plaintiffs next argue that the verdict was against the great weight of the evidence because the jury ignored undisputed evidence that the parties agreed that plaintiffs were entitled to 50% of the proceeds of IC's sale of the IP to a third party. In civil cases, when a party fails to file a motion for a new trial preserving the argument that the jury verdict was against the great weight of the evidence, the issue is waived, and there is no appellate review of the issue. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 464; 633 NW2d 418 (2001). Plaintiffs did not file a motion for a new trial preserving this issue. Therefore, the issue is waived, and there is no appellate review.[7]

---

[7] Even if we were to consider this issue, plaintiffs have not established that the jury verdict was against the great weight of the evidence. Although Theisen testified that he thought he was entitled to 50% of the money defendants received for selling the IP to Royal Precision, Zeidan testified that the parties never agreed to enter into a joint venture. It was for the jury to assess the credibility of the witnesses. *Kelly v Builders Square, Inc*, 465 Mich 29, 39-40; 632 NW2d 012 (2001). The evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

## H. VOLUNTARY DISMISSAL OF THEISEN

Plaintiffs next argue that the trial court abused its discretion in denying Theisen's request for voluntary dismissal of his claims. We disagree.

A trial court's decision whether to grant a motion for voluntary dismissal is reviewed for an abuse of discretion. *Mleczko v Stan's Trucking, Inc*, 193 Mich App 154, 155; 484 NW2d 5 (1992). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017) (quotation marks and citation omitted).

MCR 2.504(A)(2) states, in relevant part, "[A]n action may not be dismissed at the plaintiff's request except by order of the court on terms and conditions the court deems proper." In exercising its discretion regarding whether to grant a motion for voluntary dismissal, a trial court "is to weigh the competing interests of the parties along with any resultant inconvenience to the court from further delays." *African Methodist Episcopal Church v Shoulders*, 38 Mich App 210, 212; 196 NW2d 16 (1972). Such a motion is typically granted unless the defendant will be prejudiced. *Id*. The purpose of the court rule "is to protect defendant[s] from the abusive practice of dismissal after much time and effort has been put into a lawsuit[.]" *Id*. (discussing a prior version of MCR 2.504(A)(2)). A plaintiff may not request voluntary dismissal as a way to avoid losing a lawsuit on the merits. See *McLean v McElhaney*, 269 Mich App 196, 202-203; 711 NW2d 775 (2005), rev'd on other grounds 480 Mich 978 (2007); *Rosselott v Muskegon Co*, 123 Mich App 361, 375-376; 333 NW2d 282 (1983). Summary disposition constitutes an adjudication on the merits. *McLean*, 269 Mich App at 202.

In denying plaintiffs' motion "[a]t this time," the trial court explained, "[t]here is a pending summary disposition motion that pertains specifically to [Theisen] and therefore, unless and until the court decides that motion I am not going to dismiss him." The court was correct that summary disposition motions were pending when Theisen sought voluntary dismissal. Defendants were arguing that plaintiffs' claims were frivolous. TTG lacked any assets or income. The parties had by that point invested significant time and resources in this heavily litigated case. Thus, the trial court did not abuse its discretion in denying Theisen's request for voluntary dismissal.

## II. DEFENDANTS' ARGUMENTS ON CROSS-APPEAL IN DOCKET NO. 352952

### A. MOOT ISSUES

Defendants argue on cross-appeal that the trial court erred in ruling that plaintiffs' claims were not barred by 35 USC 261. This issue is moot. Defendants argued below that 35 USC 261 barred plaintiffs' claims for breach of contract, promissory estoppel, and unjust enrichment. The trial court rejected defendants' argument, and defendants now challenge that ruling. But defendants ultimately prevailed on all of those claims; the claims for breach of contract and promissory estoppel were dismissed before trial, and the jury found in favor of defendants on the unjust-enrichment claim. Plaintiffs have not established on appeal that they are entitled to reinstatement of any of those claims. Hence, any ruling by this Court regarding whether those

claims were barred by 35 USC 261 would have no practical legal effect. *Garrett*, 314 Mich App at 449. This issue is thus moot.[8]

Defendants next argue on cross-appeal that they were entitled to summary disposition on plaintiffs' claims for breach of contract and promissory estoppel because plaintiffs lacked the financial capacity to fund the alleged deals. This issue is moot. The trial court granted defendants' motion for summary disposition on plaintiffs' claims for breach of contract and promissory estoppel, albeit on grounds other than plaintiffs' lack of financial capacity, and we are not disturbing that ruling. Any ruling by this Court regarding whether summary disposition would have been warranted on the alternative basis of plaintiffs' lack of financial capacity would have no practical legal effect. *Id*. Therefore, this issue is moot.

## B. PLAINTIFFS' FRIVOLOUS CLAIMS

Defendants next argue on cross-appeal that the trial court erred in failing to find that plaintiffs' claims were frivolous when ruling on defendants' September 20, 2019 motion for summary disposition. We disagree.

> A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous. A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. [*Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890 (2017) (quotation marks and citations omitted).]

In support of their argument, defendants cite MCR 1.109(E)(7) and MCL 600.2951(3)(a). MCR 1.109(E)(7) provides, in relevant part, "In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 2.625(A)(2) states, "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) provides,

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

MCL 600.2951(3)(a) defines "frivolous" to include, as relevant here, either of the following: "The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," MCL 600.2951(3)(a)(*ii*), or, "The party's legal position was devoid of arguable legal

---

[8] Although we are reversing the grant of summary disposition to defendants on plaintiffs' claim for misappropriation of trade secrets and remanding for further proceedings on that claim, defendants have never argued that 35 USC 261 bars that claim.

merit," MCL 600.2951(3)(a)(*iii*). The term "prevailing party" is defined as "a party who wins on the entire record." MCL 600.2951(3)(b).

Defendants note that they requested a finding of frivolousness in their September 20, 2019 motion for summary disposition but that the trial court did not address the issue of frivolousness when deciding the summary disposition motion. Defendants thus assert that the trial court failed to make a requested finding of frivolousness. But defendants cite no authority requiring the trial court to make a finding regarding frivolousness at the summary disposition stage when there are still claims and counterclaims pending for trial. When the court granted defendants' September 20, 2019 motion for summary disposition regarding four of plaintiffs' claims, plaintiffs still had other claims pending that were not subject to that motion, and IC still had counterclaims pending. The remaining claims and counterclaims were the subject of a jury trial that was held after the trial court's ruling on the summary disposition motion. Defendants were free to seek a finding of frivolousness and an award of sanctions after the entry of judgment following the trial, and they in fact did file such a motion, which the trial court denied and which is the subject of the consolidated appeal in Docket No. 353990.[9] Defendants have not established that the trial court erred in declining to make a finding regarding frivolousness at the summary disposition stage.

### III. DEFENDANTS' ARGUMENT ON APPEAL IN DOCKET NO. 353990

Defendants argue that the trial court erred in denying IC's March 12, 2020 postjudgment motion for attorney fees and costs. Defendants contend that plaintiffs' claims were frivolous and that IC was thus entitled to sanctions under MCL 600.2951(1), MCR 2.625, and MCR 1.109(E). Defendants further argue that IC was entitled to case evaluation sanctions under MCR 2.403(O). This issue is moot. As explained earlier, we are reversing the grant of summary disposition to defendants on plaintiffs' trade-secret claim and remanding for further proceedings on that claim. Defendants' challenge to the denial of IC's March 12, 2020 postjudgment motion is moot because the case is no longer in a postjudgment posture. The parties will be free to pursue any appropriate postjudgment motions following the entry of a judgment on remand. Because this issue is the sole issue raised on appeal in Docket No. 353990, the appeal in Docket No. 353990 is dismissed as moot. See *B P 7*, 231 Mich App at 360 (dismissing the appeal as moot).

In Docket No. 352952, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. In Docket No. 353990, we dismiss the appeal as moot.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

---

[9] Moreover, as explained later, because we are reversing the grant of summary disposition to defendants on plaintiffs' trade-secret claim and remanding the case for further proceedings on that claim, the case is no longer in a postjudgment posture, and any postjudgment motions for sanctions will have to be brought or renewed after a final judgment is entered on remand.