ROSSELOTT v COUNTY OF MUSKEGON

Docket No. 59809. Submitted August 3, 1982, at Grand Rapids.—
Decided February 23, 1983. Leave to appeal applied for.

Johnny and Princess Rosselott and others filed a four-count
complaint on October 25, 1978, in Muskegon Circuit Court
against the County of Muskegon and the Muskegon Board of
Public Works alleging that contaminated water from the defen-
dants' sewage plant was degrading the water in plaintiffs'
wells. Plaintiffs' claim was that, through improper design or
operation of the sewage plant's lagoons and spray irrigation of
effluent, the ground water under the sewage plant had become
contaminated and that contaminated water had migrated and
contaminated the ground water under plaintiffs' properties,
thereby contaminating the plaintiffs' domestic water supply.
Defendants' position was that an interceptor drain prevented
any water contaminated by the sewage disposal plant from
flowing to the area of plaintiffs' wells, that the water in
plaintiffs' wells met all state and federal quality requirements,
that any degradation problem with plaintiffs' water supply was
the result of the high iron content indigenous to the area soils
or was the result of road salt contamination, and that the
ground water flow was toward rather than away from the
sewage plant. Defendants commissioned two studies by Keck
Consulting Service. The first report in 1979 focused on the
movement of ground water in the vicinity of the sewage facil-
ity. The study concluded that the perimeter ditch was an
effective interceptor of any lagoon seepage but suggested that
there could be a flow of contaminated water towards plaintiffs'
properties from the H H & G drain during periods of excessive
rain or when water was being pumped from the perimeter

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 772.
  17 Am Jur 2d, Continuance § 3.
[2] 17 Am Jur 2d, Continuance § 4.
[3] 17 Am Jur 2d, Continuance §§ 7, 10.
[4, 6] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 8.
[5] 5 Am Jur 2d, Appeal and Error § 774.
[7] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit §§ 10, 55.

ditch into the H H & G drain. The trial, which was scheduled for August and September of 1980, was adjourned by stipulation of the parties for more discovery. In October, 1980, defendants filed a motion pursuant to the Thomas J. Anderson, Gordon Rockwell Environmental Protection Act for the appointment of a master. The master was appointed.

At a June 25, 1981, pretrial conference, the master suggested that additional information be gathered. At the second pretrial conference on July 21, 1981, the findings of the master were presented. The thrust of these findings were that plaintiffs' water problems were not caused by the sewage plant but were rather caused by road salt chlorine in the H H & G drain. The second Keck report, which was made known at this hearing and which had originally been commissioned by defendants for a matter unrelated to this litigation, reached conclusions similar to those of the master. On July 29, 1981, plaintiffs moved to adjourn the trial which was scheduled to commence in two weeks, asserting that the second Keck report revealed new information which required additional tests. Plaintiffs alleged that the defendants negligently or intentionally failed to provide the second Keck report to plaintiffs until July, 1981, even though defendants had the report since January, 1981. At the hearing on plaintiffs' motion for adjournment, it was revealed plaintiffs had filed a suit against the Muskegon County Road Commission based on the H H & G drain discharge and road salt theories and had commenced an action against the Michigan Department of Transportation on the road salt theory. John N. Piercey, J., indicated that there had been adequate time for discovery and denied the motion to adjourn. Plaintiffs moved for voluntary dismissal. Judge Piercey ruled that he would deny the motion for voluntary dismissal as to those issues not related to the H H & G drain theories but would permit voluntary dismissal without prejudice as to the H H & G theories. Plaintiffs were unwilling to allow the cause to be bifurcated and indicated that they would be unready for the scheduled trial. Judge Piercey thereafter dismissed plaintiffs' case in its entirety with prejudice. Plaintiffs' motion for reconsideration was denied. Plaintiffs appeal. *Held:*

1. The trial court's determination that defendants had not withheld the second Keck report from plaintiffs is supported by the record.

2. The trial court did not abuse its discretion in denying the motion for adjournment.

3. The motion for voluntary dismissal without prejudice was addressed to the trial court's discretion. In view of the costs in

time and money which defendants expended to prepare for trial and the costs associated with the preparation of any similar later lawsuit, when coupled with the plaintiffs' refusal to bifurcate the claims, it cannot be said that the trial court abused its discretion in denying the motion for voluntary dismissal without prejudice.

4. The plaintiffs' clear indication that they were not prepared to go to trial provided adequate justification for the trial court's dismissal of the entire case with prejudice.

Affirmed.

1. TRIAL — CONTINUANCE — ADJOURNMENT — APPEAL.

The granting or denial of an adjournment is within the discretion of the trial court; the trial court's determination will not be disturbed absent a showing of an abuse of discretion (GCR 1963, 503.1).

2. TRIAL — CONTINUANCE — ADJOURNMENT.

Cases upholding a denial of a motion to adjourn involve some combination of these facts: an extended trial, numerous past continuances, no showing of diligence by the movant, and a lack of injustice to the movant.

3. TRIAL — CONTINUANCE — ADJOURNMENT.

A motion for an adjournment of trial on the basis that the opposing party withheld information until just before trial is properly denied where there was testimony that the information did not become available to the opposing party until just before trial, the information was equally available to both parties with diligent efforts, and the trial court offered to consider a midtrial adjournment if such was found to be necessary.

4. MOTIONS AND ORDERS — DISMISSAL — VOLUNTARY DISMISSAL.

The granting or denial of a motion for voluntary dismissal of a case is within the sound discretion of the trial court (GCR 1963, 504.1).

5. APPEAL — DISCRETION — ABUSE OF DISCRETION.

An abuse of discretion by a trial court is found only if an unprejudiced person, upon considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made.

6. MOTIONS AND ORDERS — DISMISSAL — VOLUNTARY DISMISSAL.

The granting or denial of a voluntary dismissal without prejudice is within the sound discretion of the trial judge; however, in

exercising that discretion, the judge must weigh the competing interests of the parties along with the inconvenience to the court (GCR 1963, 504.1).

7. MOTIONS AND ORDERS — DISMISSAL — VOLUNTARY DISMISSAL — DISMISSAL WITH PREJUDICE — JUDGES.

It is not an abuse of discretion for a trial court to deny a motion for voluntary dismissal without prejudice made shortly before the date of a scheduled trial and to dismiss with prejudice where the trial court offered to dismiss without prejudice that portion of the plaintiffs' claims which related to new theories, the defendants agreed to such bifurcation, the plaintiffs refused the offer for bifurcation, the plaintiffs indicated that they were unprepared to go to trial and the defendants had spent considerable time and money to prepare the defense and would be required to expend additional time and money if there was a voluntary dismissal without prejudice.

*Steketee & Timmons* (by *Peter W. Steketee*), for plaintiffs.

*Knudsen, Wasiura & Associates, P.C.* (by *Harry J. Knudsen*), for defendants.

Before: V. J. BRENNAN, P.J., and D. E. HOLBROOK, JR., and J. ERNST,* JJ.

V. J. BRENNAN, P.J. On October 25, 1978, plaintiffs filed a four-count complaint alleging that contaminated ground water from defendants' sewage treatment plant was degrading plaintiffs' wells. In response to information produced at a July 24, 1981, pretrial conference, plaintiffs moved to adjourn trial, which had been set to commence on August 13, 1981. At a hearing held on August 10, 1981, plaintiffs' motion to adjourn was denied. Plaintiffs then moved for a voluntary dismissal. This motion was also denied and the case was dismissed with prejudice. Plaintiffs' subsequent motion for reconsideration was denied on August

---

* Circuit judge, sitting on the Court of Appeals by assignment.

24, 1981. Plaintiffs appeal as of right from these judgments.

Plaintiffs' complaint alleged that the defendants had constructed and operated a sewage treatment facility utilizing lagoons and spray irrigation of effluent and that, through improper design or operation or both, they had permitted the contamination of ground waters under and near the plant. The complaint further alleged that these contaminated ground waters flowed in the direction of plaintiffs' properties and had contaminated the ground water underneath plaintiffs' properties, thus contaminating plaintiffs' domestic wells and causing other damage. The grounds for relief advanced by plaintiffs were: (1) inverse condemnation, (2) nuisance, (3) common-law water rights, (4) negligence, and (5) relevant provisions of the Thomas J. Anderson, Gordon Rockwell Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.*

On October 27, 1978, defendants filed an answer, conceding that the general ground water flow was as described in the complaint but alleging that an interceptor ditch prevented seepage of contaminated water from the sewage treatment facility. The answer also indicated that analysis of well water from some of plaintiffs' private wells revealed that it met all state and federal quality requirements.

In response to plaintiffs' interrogatories, defendants alleged that plaintiffs' water degradation problem was unrelated to the sewage system and that instead it was caused by a high iron content indigenous to area soils. Defendants alleged that, in the immediate area of the sewage facility, ground water flowed toward the waste water system rather than away from it. Defendants felt that

part of the blame for the problem was contamination from road salt.

During the course of this litigation, two studies were commissioned by defendants and performed by Keck Consulting Services. The studies were ordered by Dr. Y. A. Demirjian, Director of the Muskegon County waste water system. This raw data was compiled into reports drafted by Robert Minning, Keck's president. The initial Keck study was undertaken during the fall of 1979 and focused on the movement of ground water in the vicinity of the sewage facility. The study indicated the existence of a ground water divide, *i.e.,* a line from which ground water flows in opposite directions, in the area of Apple Road near where plaintiffs reside. The study concluded that the perimeter ditch was an effective interceptor of all lagoon seepage and also pulled in some of the natural water flow. The report also stated that two ground water divides could be formed, either during periods of excessive rain or when water was being pumped from the ditch into the H H & G drain. However, the report indicated the county was not discharging from the interceptor ditch into the H H & G drain at the time the study was conducted because the drain was being repaired and cleaned.

Trial was first set for late August and early September, 1980, but was adjourned by agreement of the parties for more discovery. On October 23, 1980, defendants filed a motion to appoint a master, pursuant to a provision of the environmental protection act, MCL 691.1203; MSA 14.528(203). A master (hereinafter special master) could be employed under the EPA to take testimony, make a record, and report findings to the court on complex and technical matters. This motion was granted,

with the result that trial had to be adjourned a second time while an appropriate master was found. The parties eventually agreed on Wayne Pettyjohn, who had the unique qualifications of being both an attorney and a hydrogeologist.

At a pretrial conference held on June 25, 1981, special master Pettyjohn suggested that more information be gathered. Several new test wells were set up, water measurements were taken, and experts from both sides analyzed the resulting data. Findings were presented to the special master at a second pretrial conference on July 24, 1981. These findings substantially corroborated those of a second Keck study which was ordered by the county but was unrelated to the instant litigation. Certain findings of the second Keck study which related to the instant case became available to the parties at this meeting. The report placed the ground water divide further south than had been previously suspected, which made it more likely that road salt was contributing to the pollution problem. The report also showed that discharge of water into the H H & G drain created a "mounding" in the ground water table, *i.e.,* a high point from which water migrated radially. This resulted in some ground water migration south or southwest toward Apple Road, where it possibly might reach some or all of plaintiffs' wells.

At the final pretrial conference, special master Pettyjohn prepared a report which made the following preliminary conclusions:

1. Chloride contamination of private wells in the vicinity of the waste water system was not related to the operation, design, or management of the waste water system.

2. The contamination problem appeared to arise from the use of deicing salts.

3. Chloride-rich waste water from the H H & G drain might be carried by the ground water flow in the direction of certain of plaintiffs' wells, resulting in contamination.

4. A few shallow wells placed between the H H & G drain and the allegedly contaminated wells near Apple Road would suffice to determine the direction of ground water flow.

Before this pretrial conference plaintffs' theory of liability against the defendants, based upon the complaint, was that contamination to their wells was caused by the operation of the waste water system. However, the second Keck report and the special master's findings, and the evidence upon which both were based, tended to negate that theory. After the pretrial conference, plaintiffs believed that the contamination resulted from road salt and/or the H H & G drain discharge. Further, plaintiffs believed that they might be able to refute the road salt theory or show that the road salt was reaching their wells only as a result of the operation of the county's waste water system. With the trial only two weeks away, plaintiffs were uncertain whether their pleadings were sufficiently broad to encompass the H H & G drain discharge as a causative factor, and the probability that deicing salts played a major role in the contamination meant that the Muskegon County Road Commission would have to be joined as a party. Therefore, on July 29, 1981, plaintiffs moved to adjourn the trial to permit them to perform further testing and to obtain additional information.

Plaintiffs' motion was heard on August 7, 1981. Plaintiffs contended that the second Keck report revealed new information and they could not proceed to trial until they obtained the following information: (1) water flow information as to

whether the discharge from the H H & G drain was proceeding in the direction of the ground water flow to the plaintiffs' wells; (2) the results of tests from water samples from certain wells to confirm or refute the road salt theory; and (3) the extent and nature of the plume of contaminants moving south from the H H & G drain discharge. Further, plaintiffs contended that the defendants had intentionally or negligently failed to produce in a timely manner the second Keck study, which plaintiffs asserted had been available in January, 1981. Also, at the hearing it was revealed that plaintiffs had filed a second lawsuit (referred to herein as *Rosselott II)* against the county and the Muskegon County Road Commission based upon the H H & G drain discharge and upon the road salt theories. Plaintiffs also commenced a lawsuit against the Michigan Department of Transportation based upon the road salt theory.

In denying the motion, the trial court stated that the lawsuit was three years old and during those three years the parties had the time and resources available to them for sufficient discovery. The court then advanced the possibility that plaintiffs residing near the H H & G drain could be dealt with separately and that a mid-trial adjournment could be provided with respect to that group to allow further testing near the H H & G drain. Plaintiffs did not accept the court's proposition and stated that, in view of the court's denial of the motion to adjourn, they were forced to move for a voluntary dismissal. The court ruled that it would deny the motion with respect to that part of the suit unrelated to the H H & G drain, but would dismiss without prejudice as to that issue. Defense counsel was willing initially to stipulate to such a partial dismissal with prejudice. However, plain-

tiffs were unwilling to allow this cause to be bifurcated with the result that the case was dismissed with prejudice in its entirety and with defense counsel threatening accelerated judgment based on res judicata with respect to the H H & G theory in *Rosselott II.*

Plaintiffs moved for reconsideration of their various motions at an August 24, 1981, hearing. Plaintiffs renewed their allegations that defendants had suppressed discovery of the second Keck study. Plaintiffs' motion was denied.

Plaintiffs raise two issues. First, they claim that the trial court abused its discretion in denying their motion for an adjournment. Plaintiffs contend that the defendants affirmatively concealed crucial information from plaintiffs until right before trial. Further, plaintiffs contend that they have been diligent in gathering information, that they have not caused unnecessary delays, and that the denial of the adjournment motion prejudiced plaintiffs in a legal sense because they face res judicata and statute of limitations problems in *Rosselott II.*

GCR 1963, 503.1 controls and provides in pertinent part:

"It is the policy of this rule to encourage the diligent preparation and trial of cases. Except where the court, within its discretion and to promote the ends of justice, adjourns a cause, continuance of any trial or hearing upon stipulation shall not be granted unless the stipulation is made in writing or made orally only in open court and is based upon good cause shown to the satisfaction of the court under all of the circumstances of the case and with a view toward speedy and substantial justice."

The grant or denial of an adjournment is, there-

fore, within the discretion of the trial court, and will not be disturbed absent a finding that this discretion was abused. *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 382; 268 NW2d 656 (1978); *Michigan State Highway Comm v Redmon,* 42 Mich App 642, 647; 202 NW2d 527 (1972). In *Hackett v Connor,* 58 Mich App 202, 206; 227 NW2d 292 (1975), this Court found that at least three factors should be considered in determining whether to grant or deny a motion for an adjournment:

> "Cases upholding a trial court's denial of a motion to adjourn have always involved some combination of the same facts: an extended trial, numerous past continuances, *Sams v O'Sheskey,* 323 Mich 177; 35 NW2d 234 (1948); no showing of diligence by this movant, *McKay v Black,* 5 Mich App 711; 147 NW2d 735 (1967); and a lack of injustice to the movant, *Snyder v Snyder,* 42 Mich App 573; 202 NW2d 504 (1972)."

After reviewing the facts in the instant case, we find that there was no abuse of the trial court's discretion in denying plaintiffs' motion for an adjournment. This lawsuit was nearly three years old at the time plaintiffs' motion was heard. Although the suit was complex, the trial court found that the parties had the time and resources available to them to complete discovery. We agree.

In arguing that the trial court abused its discretion, plaintiffs claim that the defendants knowingly concealed the second Keck report until right before trial and if the report had been available to them in January, 1981, when it was first allegedly compiled, there would have been no need for a continuance. On this point, the trial court found that, while the second Keck report may have been in draft form in January, 1981, it was not received

by the defendants until shortly before the second pretrial conference. The court found that the defendants did not delay in making the report available to plaintiffs. We find that the record supports the trial court's conclusion. The defendants commissioned Keck to do the second study for a matter unrelated to the instant lawsuit. It was not until after that study was in progress that it was extended to include gathering information relating to the H H & G drain. The trial court heard testimony from both Minning and Dr. Demirjian as to when the report was mailed to and received by the county, and found Dr. Demirjian's testimony that the report was not received until July, 1981, to be credible. We have reviewed the testimony and find no error on the part of the trial court in reaching that conclusion.

In addition, plaintiffs have not established that they could not acquire the same information through their own efforts. Their reliance on the first Keck study, which stated that it was incomplete because the H H & G drain was not operating at the time, was unreasonable when independent studies conducted during the summer of 1981 under the master's direction revealed both the H H & G mounding and the revised ground water divide. We find that this indicates that plaintiffs could have been more diligent in their own testing efforts. Plaintiffs' conduct indicates a lack of diligence on their part in failing to conduct tests that would have defined whether the likely cause of contamination was from the waste water plant, the H H & G drain, or road salt. Plaintiffs have not been able satisfactorily to explain why they did not conduct the tests.

Finally, it became apparent from the second Keck study and the master's findings that the

treatment plant was not the cause of the contamination as alleged in plaintiffs' complaint. This meant that proceeding on the original complaint, without addition of new theories or parties, would be fruitless. However, plaintiffs could have proceeded since the trial court stated that it would consider a midtrial adjournment for more tests, but plaintiffs rejected this proposal. On the basis of these facts, we find no abuse of the trial court's discretion in denying plaintiffs' motion to adjourn the trial.

Plaintiffs' second claim of error is that the trial court abused its discretion in denying plaintiffs' motion for a voluntary dismissal.

GCR 1963, 504.1(2) provides:

"By Order of Court. Except as provided in sub-rule 504.1(1), an action shall not be dismissed at the plaintiff's instance unless by order of court upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the court shall not order the action dismissed over the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal by order of court under this paragraph is without prejudice."

As with a continuance, the grant or denial of a voluntary dismissal is within the trial court's discretion. *Roberson v Thomas,* 13 Mich App 384; 164 NW2d 544 (1968). An abuse of discretion is found only if an unprejudiced person, upon considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *Bruce v Grace Hospital,* 96 Mich App 627, 632; 293 NW2d 654 (1980). Regarding voluntary dismissals, this Court in *African Methodist Episco-*

*pal Church v Shoulders,* 38 Mich App 210, 212;
196 NW2d 16 (1972), stated:

"Plaintiffs argue that the grant or denial of a voluntary dismissal is within the sound discretion of the trial judge. *Roberson v Thomas,* 13 Mich App 384; 164 NW2d 544 (1968). We agree; however, in exercising that discretion the trial judge is to weigh the competing interests of the parties along with any resultant inconvenience to the court from further delays. *Granger v Lundberg,* 32 Mich App 462; 189 NW2d 14 (1971). Normally, such a motion should be granted unless defendant will be legally prejudiced as a result. *Durham v Florida East Coast R Co,* 385 F2d 366 (CA 5, 1967). As the purpose of GCR 1963, 504.1(2) is to protect defendant from the abusive practice of dismissal after much time and effort has been put into a lawsuit, any dismissal should be on terms and conditions which protect defendant. See *American Cyanamid Co v McGhee,* 317 F2d 295 (CA 5, 1963)."

After the trial court denied plaintiffs' motion for an adjournment, plaintiffs immediately moved for a voluntary dismissal. The trial court ruled that it would deny the motion with respect to that part of the suit unrelated to the H H & G drain but would dismiss without prejudice as to any part of the suit that could relate to the H H & G drain if the parties agreed. Defense counsel was willing to stipulate that the dismissal would be without prejudice to any part of the complaint that could relate to the H H & G drain theory. However, plaintiffs refused because: (1) at that time they did not believe that the complaint related at all to the H H & G drain theory, and (2) they did not want their cause of action to be bifurcated. At that point, counsel for plaintiffs stated that if the court was unwilling to grant a voluntary dismissal without prejudice then he had to inform the court that

he was simply not prepared to go to trial later that week on the issues presented by the pleadings. The court then dismissed the entire case with prejudice.

Plaintiffs argue that the trial court abused its discretion because: (1) they now face res judicata, collateral estoppel, statute of limitations, and other related bars to their cause of action in *Rosselott II;* (2) plaintiffs' complaint contained a number of viable theories which are now lost; and (3) plaintiffs may lose their right to recover costs and legal fees incurred even if they prevail in the second suit.

We find no abuse of the trial court's discretion in denying plaintiffs' motion for a voluntary dismissal and in dismissing the entire case with prejudice. Shortly before trial, an assessment of the evidence indicated that there was no liability on the part of the defendants on the theories pled in plaintiffs' complaint with the possible exception that the complaint could relate to the H H & G drain. It became clear that plaintiffs would have to pursue their cause of action by raising additional theories and by adding other parties. The second Keck report and the master's findings confirmed these conclusions. Although plaintiffs argued at the hearing that the complaint did not relate in any way to the H H & G drain theory, the trial court and the defendants were uncertain. Apparently, the plaintiffs have changed their minds and now believe that the complaint may have related to the H H & G drain and the dismissal with prejudice will prevent them from asserting that theory in their second suit which expressly raised that theory. While we are not unsympathetic with plaintiffs' predicament, we find that plaintiffs created this situation by leaving the trial court with

no choice but to dismiss the entire case. Plaintiffs rejected the trial court's proposal to dismiss without prejudice that part of the complaint that could relate to the H H & G drain, and then plaintiffs firmly stated that they would not appear for trial if their motion was denied. Left with no alternative, the trial court dismissed the case. Quite frankly, it appears that plaintiffs were faced with the disturbing truth that they had no lawsuit and sought unrealistically to hang on anyway.

Further, the defendants have spent considerable time and a substantial amount of money in defense of this lawsuit. If this lawsuit had been voluntarily dismissed without prejudice, defendants would have to spend additional time and money in defending a new cause of action. Moreover, defendants were prepared to go to trial on the date set. We find that the defendants would have been prejudiced by a voluntary dismissal without prejudice. It is clear that the trial court weighed the competing interests of the parties, and we find unpersuasive plaintiffs' argument that the trial court abused its discretion in denying their motion for voluntary dismissal without prejudice.

Affirmed.