*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL E. DEBONO,

Plaintiff-Appellant,

v

CASEY C. CUMMINS,

Defendant-Appellee.

UNPUBLISHED
July 16, 2025
10:16 AM

No. 371585
Oakland Circuit Court
LC No. 2022-516672-DP

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff, Paul E. Debono, appeals as of right the trial court's July 2, 2024 judgment. The judgment granted defendant, Casey C. Cummins, sole legal and physical custody of the parties' minor child. The judgment also ordered plaintiff to pay child support and to pay certain attorney fees and costs. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In June 2020, the parties met and began a relationship. After the parties conceived the child, their relationship deteriorated quickly. Plaintiff repeatedly, and unsuccessfully, tried to establish a custody agreement before the child was born. In an apparent attempt to avoid unnecessary stress and further arguments, defendant altogether stopped communicating with plaintiff until several days after the birth of the child. Defendant did not put plaintiff's name on the child's birth certificate, even though she never questioned paternity.

Plaintiff filed an action under the Paternity Act, MCL 722.730 *et seq.*[1] Plaintiff sought equal parenting time and joint legal and physical custody. Defendant requested sole custody and

---

[1] Plaintiff filed three cases. The first case was filed in August 2021, before the child was born, under the Paternity Act. It was dismissed after trial commenced because plaintiff, who was proceeding *in propria persona* at the time of trial, moved for its voluntary dismissal. The second

-1-

objected to equal parenting time. But the parties agreed that plaintiff was liable to pay child support from the date of the child's birth. And the parties eventually agreed to a parenting time schedule and that plaintiff would pay a certain monthly sum in temporary child support.

Between July 2023 and January 2024, the trial court presided over a nine-day trial. In relevant part, the parties testified about their difficulties with coparenting. Defendant explained that plaintiff emotionally abused her during her pregnancy. At the time of the 2023 trial dates, both parties were employed and had their own homes. A significant amount of time was spent at trial examining plaintiff's finances and his refusal to communicate with defendant during parenting time exchanges, even after trial commenced. Ring camera footage and an audio recording demonstrating plaintiff's dismissiveness toward defendant were admitted into evidence. Dr. Richard Wooten, who was qualified as an expert in the areas of parenting time and child custody, explained a young child witnessing one parent be dismissive toward the other parent could impact the child's development, behavior, and future relationships. Dr. Wooten also explained emotional abuse is a form of domestic violence.

After concluding the established custodial environment existed solely with defendant, the trial court weighed the best-interest factors in MCL 722.23 and found it was in the child's best interests to grant defendant sole legal and physical custody. Plaintiff was granted expanded parenting time and the parties were ordered to participate in services to address their issues with coparenting. The trial court made findings concerning the parties' yearly earnings and referred the matter to Friend of the Court to calculate child support. When the parties appeared before the Friend of the Court Referee, it was asserted that plaintiff was unemployed. The referee imputed income to plaintiff and the trial court adopted this recommendation. Plaintiff was ordered to pay certain attorney fees and costs. The trial court entered the July 2, 2024 judgment and a uniform child support order. Child support was retroactive to the child's birth. This appeal followed.

## II. CUSTODY

Plaintiff argues the trial court abused its discretion by awarding defendant sole legal and physical custody. We disagree.

## A. STANDARDS OF REVIEW

In custody cases, we apply three standards of review. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-

---

case, which was filed under the Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*., was dismissed because the trial court concluded plaintiff lacked standing at the time. Finally, the third case was filed under the Paternity Act in November 2022.

the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"These three deferential standards of review are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citation omitted). When reviewing a trial court's custody decision, a reviewing court must remember

trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Id*. at 285 (quotation marks and citation omitted).]

## B. ANALYSIS

The Child Custody Act of 1970 (CCA), MCL 722.21 *et seq*., "governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021). "In any custody dispute, [the] overriding concern and the overwhelmingly predominant factor is the welfare of the child." *Wiechmann v Wiechmann*, 212 Mich App 436, 440; 538 NW2d 57 (1995) (quotation marks and citation omitted). "The purposes of the [CCA] . . . are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes." *Merecki*, 336 Mich App at 645 (quotation marks and citation omitted).

The CCA "draws a distinction between physical custody and legal custody. . . ." *Id*. at 647. Specifically, "the Legislature divided the concept of custody into two categories—custody in the sense of the child residing with a parent and custody in the sense of a parent having decision-making authority regarding the welfare of the child." *In re AJR*, 496 Mich 346, 361; 852 NW2d 760 (2014), superseded in part by statute as stated *In re AGD*, 327 Mich App 332, 342; 933 NW2d 751 (2019). "Physical custody pertains to where the child shall physically reside, whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013) (quotation marks omitted). The CCA defines joint legal custody as a circumstance where "the parents . . . share decision-making authority as to the important decisions affecting the welfare of

the child." MCL 722.26a(7)(b). When a child resides with a parent, however, that parent retains the ability to decide routine matters regarding the child. MCL 722.26a(4).

"Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents. . . ." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020). Plaintiff does not challenge the trial court's determination that the established custodial environment existed solely with defendant. Rather, plaintiff argues the trial court should have awarded the parties joint legal and physical custody. Because granting the parties' joint custody would change the established custodial environment, plaintiff was required to establish that the change was in the child's best interests by clear and convincing evidence. See *Sabatine*, 513 Mich at 285-286 (outlining the relevant burdens of proof).

"At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request." MCL 722.26a(1). Trial courts must determine whether joint custody is in a child's best interests by examining the best-interest factors stated under MCL 722.23, MCL 722.26a(1)(a), and by determining whether the "parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child," MCL 722.26a(1)(b). See also *Dailey v Kloenhamer*, 291 Mich App 660, 667; 811 NW2d 501 (2011). "Regardless of whether a court is establishing custody in an original matter or altering a prior custody order, the trial court must determine whether the change of custody is in the [child's] best interests. . . ." *Johnson v Johnson*, 329 Mich App 110, 128-129; 940 NW2d 807 (2019). The trial court "must make specific findings of fact regarding each of the 12 statutory best-interest factors." *Id*. at 129. "A trial court's findings regarding each best interests factor are reviewed under the great weight of the evidence standard." *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009).

The best-interest factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

-4-

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

"A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Indeed, courts "are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id.* (quotation marks and citation omitted). A single circumstance can be relevant to and considered in determining more than one factor. *Fletcher v Fletcher (After Remand)*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998).

In this case, the trial court found that factors (d), (e), (g), and (h) were equal while factors (a), (b), and (i) were inapplicable. It also determined that factors (b), (c), (f), (j), (k) and (*l*) favored defendant. Plaintiff challenges the trial court's findings as to factors (b), (c), (f), (j), and (*l*).

With respect to factor (b), in *MacIntyre v MacIntyre*, 267 Mich App 449, 454; 705 NW2d 144 (2005), this Court held evidence relevant to this factor is whether "each party equally assisted the child with his schoolwork, hobbies, and religious education," and which party "was better able to provide guidance." Plaintiff argues the trial court ignored evidence he provided love, affection, and guidance to the child and improperly focused on plaintiff's treatment of defendant when deciding this factor. According to plaintiff, this factor should be weighed equally. We disagree.

The record is replete with evidence plaintiff is dismissive toward defendant[2] and defendant believed plaintiff was emotionally abusive toward her. Dr. Wooten testified emotional abuse is a form of domestic violence, which the trial court noted in the May 2024 opinion and order. Dr. Wooten further elaborated that research supported, "if you have parents [who] are in conflict to the point where they're dismissive and things along those lines," it impacts the child's behavior

---

[2] Plaintiff expressed skepticism about the validity of medical advice that defendant conveyed about the child. For example, plaintiff admitted that defendant repeatedly advised against certain foods in the child's diet because they caused digestive issues; even so, plaintiff did not comply and advised defendant that she "should read a parenting book about raising healthy eaters. . . ."

and development. According to Dr. Wooten, a parent's dismissive behavior could negatively impact a child's ability to "collaborate, share, communicate, and take care of others." While certain witnesses testified that defendant is loving toward the child and that they share a bond, the trial court found Dr. Wooten to be "very credible." The trial court also found Dr. Wooten's "expert testimony about the psychological damage caused to a child when one parent completely ignores another parent in front of their child is extremely troubling and causes the court great concern for this minor child." The trial court placed greater weight on Dr. Wooten's testimony than the testimony of others, and we must defer to the trial court. See *Sabatine*, 513 Mich at 285. See also MCR 2.613(C) ("regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

While plaintiff argues evidence concerning his treatment of defendant concerns best-interest factor (j), not factor (b), we disagree. Indeed, plaintiff's inability to be respectful toward defendant undoubtedly impacts his ability to provide the child with proper guidance for the reasons just discussed. Additionally, a single circumstance can be relevant to, and considered in, determining more than one factor. See *Fletcher (Aft Rem)*, 229 Mich App at 24-25. Defendant's testimony supports she was willing to foster the child's relationship with plaintiff. Defendant also provided the child with love and appropriate guidance. The trial court's finding that factor (b) favored defendant is not against the great weight of the evidence. See *MacIntyre*, 267 Mich App at 454 (holding the trial court properly found factor (b) favored the plaintiff, where the plaintiff "was better able to provide guidance"). See also *Wright v Wright*, 279 Mich App 291, 301; 761 NW2d 443 (2008) ("In light of the trial court's valid findings of manipulation by [the] plaintiff, the trial court did not decide contrary to the great weight of the evidence when it found [factor (b)], and all the others that hinged on a sincere concern for the children's general well-being, favored [the] defendant.").

With respect to factor (c), plaintiff argues the trial court relied on clearly erroneous findings when ruling this factor weighed in defendant's favor. Plaintiff notes the trial court found his employment was "spotty," and he had significant financial debts. While plaintiff argues he simply went through financial difficulty because of the COVID-19 pandemic, the record supports his issues were not ordinary. Indeed, plaintiff took out a significant loan from the United States Small Business Administration (SBA) and admittedly used some of the funds in a questionable manner. Additionally, plaintiff acknowledged he was personally liable for repayment of the loan. He also acknowledged filing for bankruptcy was a possibility, testifying: "I don't have the funds to pay the loan back in full. . . ." At the time of trial, plaintiff was attempting to work out a solution with the SBA. But, as noted by the trial court, plaintiff was not forthcoming about the details concerning his loan. He did not provide certain documents until well after trial began. Plaintiff also did not provide certain details about his finances, including his monthly expenses and the amount in his savings account.

In contrast, defendant was forthcoming and gainfully employed. At the time of trial, she had maintained her employment since February 2022. Although defendant was unemployed after the child's birth, it was for a short period of time. Defendant, who did not receive child support from plaintiff until the child was 14 months old, was able to support herself and the child during that time. Defendant also ensured the child went to medical appointments and she provided him with medical insurance. The trial court's finding that factor (c) favored defendant was not against

the great weight of the evidence. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

With respect to factor (f), the trial court found this factor favored defendant because she was more morally fit than plaintiff. "[U]nder factor f, the issue is not who is the morally superior adult"; rather, "[t]rial courts must look to the parent-child relationship and the effect that [any questionable] conduct . . . will have on that relationship." *Id*. at 712-713 (quotation marks and citation omitted). According to plaintiff, the trial court improperly focused on his finances—not his ability to parent.

When analyzing factor (f), the trial court was required to consider "conduct that bears on how one functions as a parent," *McIntosh*, 282 Mich App at 480. In *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994), our Supreme Court explained that a mother's extramarital affairs did not support she would "establish a poor moral example for the children" because there was no evidence the affairs impacted her "fitness *as a parent*.". In this case, the trial court recognized that plaintiff provided "inconsistent explanations [for] his financial issues," was "in default of a substantial loan," and used "proceeds from a business loan for his personal use, legal fees, etc." However, the trial court did not explain how these failings correlated to plaintiff's ability to parent.

Nevertheless, plaintiff recognizes that the trial court also considered plaintiff's dismissive attitude toward defendant when analyzing factor (f). The trial court noted Dr. Wooten's testimony that plaintiff's behavior could "be very harmful to the child's development," and the trial court placed great weight on Dr. Wooten's testimony. Plaintiff's dismissive, and prideful, attitude clearly impacted his ability to effectively parent and was properly considered by the trial court when analyzing factor (f). See *Wright*, 279 Mich App at 301-302 (finding the trial court properly considered the father's "manipulative and generally vindictive" conduct when analyzing factor (f)). Moreover, defendant testified that she was honest, moral, and committed to putting the child's needs first. The trial court clearly found this testimony to be credible based on its overall ruling. Thus, despite the trial court's improper consideration of defendant's financial issues without the requisite connection to his ability to parent, we conclude that the trial court's finding that factor (f) favored defendant was not against the great weight of the evidence.

Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. . . ." MCL 722.23(j). The trial court found that factor (j) favored defendant. Plaintiff argues that the trial court focused solely on his refusal to speak with defendant during parenting time exchanges and failed to acknowledge defendant's failure to facilitate a relationship between plaintiff and the child. It is true defendant refused to involve plaintiff in the child's birth, withheld the child from plaintiff when a court order was not in place, did not list plaintiff on the birth certificate, did not include plaintiff in certain medical appointments, and was quick to unfairly judge plaintiff's parenting skills at times. But, as already discussed, plaintiff displayed a dismissive attitude toward defendant in the child's presence and the trial court recognized that defendant's actions occurred in response to plaintiff's actions, including threats against defendant and her family. While plaintiff notes that Friend of the Court Family Counselor Rodney Yeacker

told the parties they did not need to communicate during parenting time exchanges,[3] the trial court encouraged them to exchange pleasantries to make the child more comfortable. Defendant complied. Plaintiff, outside of a few occasions, did not, even though he testified he would follow the trial court's instructions. More concerning, plaintiff made dismissive comments about defendant to the child. As noted by the trial court, Dr. Wooten's testimony supported finding that plaintiff's behaviors could negatively impact the child's development, behavior, and adult relationships. The behavior could also impact the child's relationship with defendant, or plaintiff, or both. Plaintiff's dismissive and disrespectful behavior only slightly improved after Dr. Wooten testified and the trial court encouraged the parties to work on their coparenting relationship for the sake of the child. Because plaintiff failed to comply, the trial court rightfully questioned whether he would comply with its orders in the future.

In contrast, after trial commenced, defendant made efforts to improve the parties' relationship and to comply with the trial court's suggestions. There is no evidence that defendant spoke poorly of plaintiff in the presence of the child. While plaintiff notes that Yeacker found factor (j) favored him, "evaluations are not conclusive on any one issue or child custody factor." *McIntosh*, 282 Mich App at 475. "[T]rial courts may consider psychological evaluations, and, at their discretion, afford them the weight they deem appropriate in accord with the Michigan Rules of Evidence. . . ." *Id.* Considering the evidence as a whole, the trial court's finding that factor (j) weighed in defendant's favor was not against the great weight of the evidence. See *id.* at 480-481 (concluding the trial court properly considered "the evidence as a whole" when analyzing factor (j)). See also *MacIntyre*, 267 Mich App at 459.

Finally, plaintiff argues the trial court failed to consider the child's relationship with his halfsibling when making findings concerning factor (*l*). Factor (*l*) is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." See MCL 722.23(l). "Factor (*l*) is a 'catch-all' provision." See *McIntosh*, 282 Mich App at 482, quoting *Ireland v Smith*, 451 Mich 457, 464 n 7; 547 NW2d 686 (1996). We fail to see how the trial court's findings relating to factor (*l*) were against the great weight of the evidence. While plaintiff is correct the trial court did not expressly consider the child's relationship with his halfsibling, the trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." See *MacIntyre*, 267 Mich App at 452. Rather, "it is the best interests of each individual child that will control the custody decision," *Wiechmann*, 212 Mich App at 440; and the trial court properly considered relevant evidence relating to the child's best interests when analyzing factor (*l*).

After considering the best-interest factors, the trial court concluded it was in the child's best interests to award defendant sole legal and physical custody because the parties were unable to "cooperate, communicate, compromise, or co-parent effectively." Contrary to plaintiff's arguments on appeal, the trial court did not abuse its discretion. "Above all, custody disputes are to be resolved in the child's best interests." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d

---

[3] Yeacker's advice pertained to discussing matters related to the child and Yeacker testified that the parties should exchange simple greetings, tell the child to have fun, and express excitement that the child had an opportunity to spend time with the other parent.

748 (2001). The trial court "shall determine whether joint custody is in the best interest of the child" by addressing the statutory best-interest factors in MCL 722.23 and whether "the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1)(b).

This Court has held, "[i]f two equally capable parents whose . . . relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children." *Bofysil*, 332 Mich App at 249 (quotation marks and citation omitted). Additionally, when parents have a "deep-seated animosity" between them that causes them to have "an irreconcilable divergence in their opinions about how to foster [the] child's well-being," joint custody ceases to be an option. *Wright*, 279 Mich App at 299-300, citing MCL 722.26a(1)(b). In *Kuebler v Kuebler*, 346 Mich App 633, 693-696; 13 NW3d 339 (2023), we vacated a trial court's decision to grant joint legal custody where the evidence established the parties were unable "to communicate and make joint decisions regarding the children" and frequently required third-party and court involvement.

The trial court considered the best-interest factors and the facts and circumstances of this case. As found by the trial court, there is no indication the parties will be able to communicate effectively in the near future or work together for the child's benefit. At the time of trial, plaintiff wanted to engage in important communications with defendant in writing. Defendant did not think this was an effective way to coparent, but plaintiff refused to engage in in-person discussions. Plaintiff was overtly dismissive of defendant in the presence of the child and he used aggressive tactics to try to get his way. Defendant did not think plaintiff was honest or moral. She testified plaintiff emotionally abused her, threatened her and her family, and harassed her during her pregnancy. Defendant did not trust plaintiff to access the child's medical records because they were intertwined with her own. Defendant's concern about plaintiff accessing her private information was not unfounded. Indeed, plaintiff somehow acquired, and wrote down, defendant's Social Security number without her permission. Defendant believed plaintiff did the opposite of what she asked, even if compliance with her request was in the child's best interests. And the evidence supports that plaintiff sometimes failed to timely communicate with defendant about the child's needs, including an extreme diaper rash.

Although plaintiff testified that he was willing to coparent with defendant and improve their relationship, the trial court found plaintiff's testimony to be incredible and lacking in sincerity at times. Additionally, plaintiff's conduct throughout the lengthy trial belied his assertion he was willing, and able, to coparent with defendant. Defendant did not believe coparenting with plaintiff was possible at the time of trial. Given the parties' acrimonious relationship and the trial court's continuous involvement that commenced even before the child's birth, joint legal custody could cause the child harm. See *Fisher v Fisher*, 118 Mich App 227, 233-234; 324 NW2d 582 (1982) (declining "to disturb the trial court's denial of joint custody" where "an award of joint custody

would . . . be injurious to the children").[4] Plaintiff failed to establish by clear and convincing evidence it was in the child's best interests to grant the parties joint legal custody.

With respect to the trial court's decision to grant defendant sole physical custody, the trial court properly concluded joint physical custody was improper at the time of trial. Indeed, the parties were unable to coparent, in part because of plaintiff's dismissive attitude toward defendant. Dr. Wooten's testimony supports that plaintiff's behavior could impact the child's relationships, including his relationship with defendant, in the future. See e.g., *McCain v McCain*, 229 Mich App 123, 124-131; 580 NW2d 485 (1998) (upholding the trial court's decision to grant the plaintiff sole physical custody where the evidence supported the defendant "would attempt to destroy the relationship between [the] plaintiff and her children"). Additionally, the child had primarily lived with defendant for the duration of his young life and she provided most of his care. Plaintiff did not dispute that the child's established custodial environment was with defendant and that his parenting time should be gradually increased. Defendant testified the child, who was 34 months old at the time the judgment was entered, would benefit from fewer transitions. At the time of trial, plaintiff had two overnight parenting times with the child each month, at which time he coslept with the child. Defendant and the Friend of the Court objected to this practice, and it appears the parties' inconsistent bedtime routines impacted the child. Plaintiff failed to establish by clear and convincing evidence it was in the child's best interests to grant the parties joint physical custody. The trial court's decision to award defendant sole legal and physical custody was not an abuse of discretion, and we affirm that decision.

## III. CHILD SUPPORT

Plaintiff next argues the trial court failed to comply with the requirements of the Michigan Child Support Formula (MCSF) when calculating his income for purposes of child support. We agree with plaintiff.[5]

## A. PRESERVATION AND STANDARDS OF REVIEW

Defendant contends that plaintiff's arguments concerning the child-support calculations are unpreserved because they were not specifically raised in the trial court. It is true that, generally, for an issue to be preserved, it must be raised before the trial court. *Dailey*, 291 Mich App at 669. But, "no specific objection is required to preserve a challenge to the trial court's finding or

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citations omitted).

[5] We disagree with defendant that this argument is abandoned because plaintiff cites relevant authority and explains his arguments. Cf. *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.") (quotation marks and citation omitted.)

decision." *Kuebler*, 346 Mich App at 652 n 9. The issue is preserved because the parties' income was calculated below.

"Child support orders and the modification of such orders are reviewed for an abuse of discretion." *Peterson v Peterson*, 272 Mich App 511, 515; 727 NW2d 393 (2006). Specifically, "[t]he trial court's discretionary rulings permitted by statute and the MCSF are reviewed for an abuse of that discretion." *Ewald v Ewald*, 292 Mich App 706, 714-715; 810 NW2d 396 (2011). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Butler v Simmons-Butler*, 308 Mich App 195, 224-225; 863 NW2d 677 (2014). An error of law by the trial court necessarily constitutes an abuse of discretion. *Ewald*, 292 Mich App at 715.

But, "[w]hether a trial court properly operated within the statutory framework relative to child support calculations and any deviation from the child support formula are reviewed de novo as questions of law." *Peterson*, 272 Mich App at 516. "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted). Furthermore, we review the trial court's factual findings underlying its determination regarding child support for clear error. *Ewald*, 292 Mich App at 714. "A finding is clearly erroneous if this Court, on all the evidence, is left with the definite and firm conviction that a mistake was made. . . ." *Berger*, 277 Mich App at 723.

## B. ANALYSIS

"[T]he [trial] court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519." MCL 552.605(2). "Just as with a statute, courts must comply with the plain language of the MCSF, and may not read language into the MCSF that is not present." *Clarke v Clarke*, 297 Mich App 172, 179; 823 NW2d 318 (2012). "A trial court must strictly comply with the requirements of the MCSF in calculating the parents' support obligations unless it 'determines from the facts of the case that application of the child support formula would be unjust or inappropriate. . . .' " *Borowsky v Borowsky*, 273 Mich App 666, 673; 733 NW2d 71 (2007), quoting MCL 552.605(2).

> If the trial court determines that deviation from the formula is warranted, it must set forth in writing or on the record (1) the amount of child support determined by application of the formula, (2) how the order deviates from the formula, (3) the value of property or other support awarded instead of the payment of child support, if applicable, and (4) the reasons why application of the formula would be unjust or inappropriate in the case. [*Borowsky*, 273 Mich App at 673.]

"The first step in determining the parents' support obligation under the MCSF is to determine each parent's net income in order to establish, as accurately as possible, the monies available to support the child[]." *Id.* (quotation marks omitted). See also 2021 MCSF 2.01(B). In reaching this objective, "[a]ll relevant aspects of a parent's financial status are open for consideration when determining support." 2021 MCSF 2.01(B). "The term 'net income' means all income minus the deductions and adjustments permitted by [the MCSF]." 2021 MCSF 2.01(A).

-11-

"[O]nce the gross income is tallied, the trial court must subtract *allowed* deductions from gross income to arrive at net income." *Borowsky*, 273 Mich App at 674. Allowable deductions from income are outlined in 2021 MCSF 2.07.

The MCSF acknowledges the income of an individual can be difficult to calculate because of certain circumstances, including that some people "have types of income and expenses not frequently encountered when determining income for most people." 2021 MCSF 2.01(E)(1)(a). "In these instances, the MCSF directs that the court give special attention to factors such as unusual forms of income (e.g., profit sharing); in-kind income; redirected income; deferred income; fringe benefits; and certain tax deductions." *Carlson v Carlson*, 293 Mich App 203, 207; 809 NW2d 612 (2011). When "determin[ing] the monies that a parent has available for support, it may be necessary to examine business tax returns, balance sheets, accounting or banking records, and other business documents to identify any additional monies a parent has available for support that were not included as personal income." 2021 MCSF 2.01(E)(2). "Evidence showing . . . other types of income will vary in the future may be considered." 2021 MCSF 2.02(C).

In entering the uniform child support order, the trial court failed to consider plaintiff's income varied in the years before July 2024. It is well settled "the child support formula 'shall be based upon the needs of the child and the actual resources of each parent.' " *Ghidotti v Barber*, 459 Mich 189, 198; 586 NW2d 883 (1998), quoting MCL 552.519(3)(a)(*vi*). The MCSF is clear a parent's historical income, based on patterns therein, is an important factor to consider. See *Diez v Davey*, 307 Mich App 366, 379; 861 NW2d 323 (2014). "Where income varies considerably year-to-year due to the nature of the parent's work, [trial courts] use three years' information to determine that parents' income." 2021 MCSF 2.02(B).

The trial court did not "use three years' information to determine [plaintiff's] income." See 2021 MCSF 2.02(B). Rather, the trial court simply found plaintiff earned $80,000 each year working for Beanstalk Property Solutions, LLC, even though plaintiff only worked there from September 1, 2022 to December 31, 2023. We must vacate the child support award and remand for recalculation of plaintiff's income consistent with 2021 MCSF 2.02(B). Although defendant purports to provide sufficient financial information for this Court to make a determination as to plaintiff's income in 2021, 2022, and 2023, we decline to decide the issue because we are not a fact-finding court, *Bean v Directions Unlimited, Inc*, 462 Mich 24, 34 n 12; 609 NW2d 567 (2000). Also, it is unclear whether all of the necessary facts have been presented to us and plaintiff disputes defendant's arguments concerning his income. It is the trial court that must make any factual determinations.

Additionally, although defendant argues the trial court did not decide plaintiff's January 2024 motion to modify child support because of his unemployment, the record supports the Friend of the Court Referee was aware plaintiff was unemployed as of January 1, 2024. It also supports the referee decided to impute $80,000 in yearly income to plaintiff. The trial court adopted this recommendation by entering the July 2024 uniform child support order. In doing so, it impliedly denied plaintiff's January 2024 motion to modify child support. Plaintiff argues the trial court improperly imputed income to him. We agree.

Again, "the child support formula 'shall be based upon the needs of the child and the actual resources of each parent.' " *Ghidotti*, 459 Mich at 198, quoting MCL 552.519(3)(a)(*vi*). "In

applying this mandate, cases have broadened the limits of actual resources to include certain payers' unexercised ability to pay." *Ghidotti*, 459 Mich at 198 (quotation marks and citations omitted). Accordingly, "[a] trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn." *Carlson*, 293 Mich App at 205-206 (quotation marks and citation omitted).

"[A] court's decision to impute income must be supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. at 206 (quotation marks and citation omitted). This rule "is essential to ensure that any imputation of income is based on an actual ability and likelihood of earning the imputed income. Any other rule would be pure speculation and a clear violation of the requirement that child support be based upon the actual resources of the parents." *Ghidotti*, 459 Mich at 199. "The amount of potential income imputed should be sufficient to bring that parent's income up to the level it would have been if the parent had not reduced or waived income." 2021 MCSF 2.01(G)(1). "Imputation of potential income should account for the additional costs associated with earning the potential income such as . . . taxes that a parent would pay on the imputed income." 2021 MCSF 2.01(G)(3).

"[B]efore income may be imputed to a parent, the trial court must first find that the parent is *voluntarily* unemployed, underemployed, or has an unexercised ability to earn." *Clarke*, 297 Mich App at 183 (emphasis added). "Once the trial court determines that a parent is voluntarily unemployed, underemployed, or has an unexercised ability to earn," the court is to consider the 11 factors listed in 2021 MCSF 2.01(G)(2). *Clarke*, 297 Mich App at 183. "These factors generally ensure that adequate fact-finding supports the conclusion that the parent to whom income is imputed has an actual ability and likelihood of earning the imputed income." *Id*. at 184, quoting *Berger*, 277 Mich App at 725-726 (quotation marks omitted). A trial court does not comply with the requirements applicable to the imputation of income if it fails to "articulate information about how each factor in [2021 MCSF 2.01(G)(2)] applies to a parent having the actual ability and a reasonable likelihood of earning the imputed potential income, or failing to state that a specific factor does not apply." 2021 MCSF 2.01(G)(4)(c).

Evidence was presented at trial concerning plaintiff's employment history and ability to earn money. Plaintiff testified about the devastating impact COVID-19 had on the commercial real estate business. But, the trial court did not make findings as to whether plaintiff was "voluntarily unemployed, underemployed, or has an unexercised ability to earn." See *Clarke*, 297 Mich App at 183. The trial court also did not go through each factor listed in 2021 MCSF 2.01(G)(2). The trial court did not articulate how each factor applied, or state that the factor did not apply, as required by 2021 MCSF 2.01(G)(4)(c). In short, the trial court did not comply with the requirements of 2021 MCSF 2.01(G)(2) and 2021 MCSF 2.01(G)(3). We vacate the trial court's decision to impute $80,000 in income to plaintiff and remand for further consideration. On remand, the trial court must determine whether to impute income to plaintiff and how much income to impute by using the factors provided in 2021 MCSF 2.01(G)(2). The trial court must also follow 2021 MCSF 2.01(G)(3)'s mandates. Upon recalculation, the trial court may deviate from the MCSF should it conclude that application of the MCSF would be unjust or inappropriate under the facts of this case. If the trial court elects to deviate from the formula, it must satisfy the requirements of MCL 552.605(2)(a) through (d). See *Borowsky*, 273 Mich App at 689. The trial

court may hold additional hearings and receive additional exhibits and testimony as it deems necessary.

## IV. ATTORNEY FEES

Plaintiff argues the trial court abused its discretion by awarding defendant attorney fees and costs. We disagree. Nevertheless, because the trial court failed to make necessary findings concerning the amount of attorney fees awarded to defendant, we must vacate the award of attorney fees and costs and remand for further proceedings.

### A. STANDARDS OF REVIEW

We review a trial court's award of attorney fees for an abuse of discretion. *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). An abuse of discretion occurs when the result falls outside the range of principled outcomes. *Id*. But, "[w]e review a trial court's findings of fact underlying the award of attorney fees for clear error, and we review any underlying issues of law de novo." *Id*. A finding is clearly erroneous if we are "left with a definite and firm conviction that a mistake was made[.]" *Berger*, 277 Mich App at 723.

### B. ANALYSIS

"A court may award costs and attorney fees only when specifically authorized by statute, court rule, or a recognized exception." *In re Waters Drain Drainage Dist*, 296 Mich App 214, 217; 818 NW2d 478 (2012). "The party requesting attorney fees bears the burden of proving they were incurred, and that they are reasonable[.]" *Reed v Reed*, 265 Mich App 131, 165-166; 693 NW2d 825 (2005) (citations omitted). It is clear from the record the trial court awarded defendant attorney fees and costs under MCR 2.504(D).

"MCR 2.504(A) governs the voluntary dismissal of actions." *Mleczko v Stan's Trucking, Inc*, 193 Mich App 154, 155-156; 484 NW2d 5 (1992). MCR 2.504(D) states:

> **(D) Costs of Previously Dismissed Action.** If a plaintiff who has once dismissed an action in any court commences an action based on or including the same claim against the same defendant, the court may order the payment of such costs of the action previously dismissed as it deems proper and may stay proceedings until the plaintiff has complied with the order.

"Thus, the court rules recognize that a plaintiff may not avoid the payment of costs merely by dismissing an action and commencing a new action." *Hill v LF Transp, Inc*, 277 Mich App 500, 510; 746 NW2d 118 (2008). Indeed, MCR 2.504(D) gives a trial court discretion to order the payment of "such costs of the action . . . as it deems proper. . . ." Under MCR 2.504(D), costs include attorney fees. *Sirrey v Danou*, 212 Mich App 159, 161; 537 NW2d 231 (1995). "As the purpose of [MCR 2.504(A)(2)] is to protect defendant from the abusive practice of dismissal after much time and effort has been put into a lawsuit, any dismissal should be on terms and conditions which protect [the] defendant." *Rosselott v Muskegon Co*, 123 Mich App 361, 374; 333 NW2d 282 (1983) (quotation marks and citations omitted).

The first action was dismissed without prejudice under MCR 2.504(A)(2), after trial was already underway. Plaintiff then filed a second action under the CCA, which was dismissed by the trial court after it concluded that plaintiff lacked standing. Plaintiff then filed the third action under the Paternity Act. There is no meaningful difference between the relief sought in the first and third actions. "In short, because the instant action involves the same essential claim as the [first] action," plaintiff cannot "escape responsibility for paying costs in the prior action merely by choosing to commence a new action instead of continuing the old action." See *Hill*, 277 Mich App at 511. While plaintiff argues the trial court abused its discretion by ordering attorney fees and costs under the facts of this case, our Supreme Court has "stated that an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id*. (alteration, quotation marks, and citation omitted). Because the trial court's overall decision to award attorney fees and costs was not outside the range of reasonable and principled outcomes, plaintiff's argument fails.

Even so, we agree with plaintiff that the trial court failed to make findings concerning the appropriate amount of attorney fees. For purposes of MCR 2.504(D), if "the work product from the dismissed action is usable in the subsequent action," the plaintiff should not be required to pay those costs and fees. *Sirrey*, 212 Mich App at 161. See also *McKelvie v City of Mount Clemens*, 193 Mich App 81, 85; 483 NW2d 442 (1992) ("if the same action is being brought in another forum, the plaintiff should not be required to pay the defendant's costs and attorney fees to the extent that the work product from the action to be dismissed is usable in the subsequent action"). The trial court did not consider whether any work product from the first case was "usable" in the third case. Rather, the trial court simply ordered plaintiff to "reimburse Defendant Mother for the attorney fees and costs incurred on the 1st case, through the 1st day of that trial. . . ." It is likely some of the work product from the first case was "usable" in the third case; however, the trial court did not make any relevant findings for this Court to review. In the absence of a reviewable determination, we must vacate the award of attorney fees and costs and remand for the trial court to articulate factual findings or for further consideration.[6] The trial court may determine the issue on the existing record or take additional evidence, including testimony, in its discretion.

V. CONCLUSION

The trial court did not abuse its discretion when it awarded defendant sole legal and physical custody. But, because the trial court failed to fully comply with the MCSF when calculating plaintiff's income for purposes of determining child support, we vacate the child support order and remand for further proceedings consistent with this opinion. And, although the

---

[6] We recognize that the trial court subsequently determined that plaintiff had to pay defendant's attorney fees as ordered in the judgment. Even so, the court noted that evidentiary support regarding the amount of fees related to one of defendant's prior attorneys was lacking and defendant's attorney agreed that defendant would reimburse plaintiff if he prevailed on appeal.

-15-

trial court did not abuse its discretion by awarding defendant attorney fees and costs under MCR 2.504(D), we vacate the amount awarded and remand for further proceedings consistent with this opinion because the trial court failed to make the necessary findings concerning the amount of attorney fees and costs. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel